Martinez v. Ryan is founded on the very fact that, as the Court observed on page 9 of the Slip of Opinion, an incarcerated defendant is in no position to develop the evidentiary basis for a claim of ineffective assistance of counsel, which often rests on evidence outside the record. Thus, the Court's use of the failure-to-develop-the-evidence language in Martinez answers the question that the District Court here abused its discretion when it denied Mr. Lopez's motion for relief from judgment under 60b-6. I have a factual question that I want to make sure that I'm correct on this. Can you show me where, prior to the April 2012 motion in the District Court, Mr. Lopez alleged that his sentencing counsel or post-conviction counsel had been ineffective because counsel had failed to present his background to a court as mitigating evidence? Your Honor, that was first raised in February of this year in a motion to reopen the post-conviction petition under Rule 32 in the Arizona Maricopa County Superior Court of Arizona. Prior to that, we were relying on the settled law of this circuit and every other circuit in this country, which this Court, under NEDS, says we were entitled to do. And thus, we have not changed any position. Instead, if we're, Judge Callahan referred to The settled law of this circuit, as we have set out in the very long string cited in our reply brief, Your Honor, that any claim for ineffective assistance of counsel, post-conviction counsel, would have been rejected and precluded by the law of this circuit, as this circuit had interpreted Coleman v. Thompson for over 20 years. And so, we have not changed any position. I'm sorry. There are a number of somewhat difficult-to-unpack layers of procedure in this case. But if we just cut through all that and look at the question of prejudice, let's assume that you can get past all the procedural barriers in the claim. Martinez, somewhat like Strickland, seems to require that there be prejudice from cause and prejudice, and it's somewhat similar. Given the things that the state trial judge said at the time of sentencing, why is there prejudice here? Why wouldn't the sentence have been the sentence claim, even if the judge had had some more evidence of your client's rotten childhood? There are several answers to that question, Your Honor. And you're right, there is a procedural morass here, which, of course, is why we're asking for a stay. But if we go straight to the question of whether or not we've established a substantial claim of ineffective assistance of counsel, which in Martinez, Justice Kennedy defined as one similar to a COA standard, a colorable claim, if you look at the evidence that was presented, none of which was before the district court judge. I mean, I'm sorry, the superior court judge. So the trial judge was saying, even if you prove pathological intoxication, that wouldn't have changed my mind. But that's not our claim. No, it isn't. But the trial judge said that he'd been around the block. He'd handled cases as a lawyer. He'd been on the bench for a while, and he'd never seen a more heinous crime. And, of course, cruelty and heinousness was the very basis for the ruling. So I guess I'm having a difficult time seeing how, all the way on the merits, whether you would ever get relief, no matter what. Well, Your Honor, I guess I would direct you to the footnote in our reply brief where we laundry list all of those cases in the U.S. Supreme Court where the mitigation, exactly like the mitigation that we're offering here, was sufficient for the U.S. Supreme Court to find that the evidence would have made a difference in cases that are factually far more egregious than the factual scenario here in Mr. Lopez's case. For example, in one of those cases, I believe it was the Wiggins case, Mr. Wiggins killed a 77-year-old woman, drowned her in her bathtub, put lye in the bathtub and left her there to die where her son found her, her skirt pulled up. In that case, the court found that evidence of cognitive impairment was enough for there to be a reasonable probability that the outcome would have been different. There are several other cases in Williams where the evidence was that, I believe there was also, I'm sorry, I'm going to confuse all my cases here, but there was a rape, there was a bludgeoning to death, there are cases that involved, you know, being brought for extended periods of time, a victim taken over to Kentucky. I'm sorry, I'm losing the case here. All those cases are in the laundry list provided in the reply brief and those facts are much more egregious. And I know that just recently there was the dissent in the Dietrich case, but if you look at the facts of the Dietrich case where a panel of this court did find that there was sufficient mitigation for there to be a reasonable probability of a different result. But it didn't matter if it was a judge or a jury. In this case, we knew it would have been that judge because that was the procedural posture at that time. Your Honor, the law surrounding the question of prejudice with a Strickland analysis is an objective, not a subjective one. And the judge's language, frankly, was uninformed. He hadn't heard this evidence. He didn't say there was no amount of mitigation that could ever be presented that would have caused him to not sentence Mr. Douglas. Kagan. What about another procedural question? If we were to determine that you could get by the substantiality bar of Martinez and then it went back to the district court and you have all this evidence that we actually had in front of us at one point as to whether it was the same claim or a different claim, what would be the procedural posture from there? Would it go back? Should it go back to Arizona under Pinholster, at which point there would already be a potentially independent bar to its consideration, and then would it end up back in district court with the new evidence? What is your sense of the procedural path? I believe you're referring to the procedural path followed by the court in Gonzales, if I'm correct. Right. Well, assuming, you know, we didn't have Martinez, but assuming we could Mr. Lopez can get by Martinez and now he's able to go back and raise his ineffectiveness of appellate counsel claim. Well, in Gonzales v. Wong, the Ninth Circuit here said that when somebody got through their – the Pinholster question, when you addressed the Pinholster question, this Court said that we're going to hold on to the case and we're going to send you back to state court. Mr. Lopez has already been back to state court. He's already exhausted this exact same claim, and a petition for review was denied last week. So there really would be no point. So he's already – so he'd be back where I said he'd be in the district court. Yes, ma'am. So then the question would then become in light of all the evidence he put on, which was before us, is in the record in the Federal court. Is there anything that would preclude us from making the prejudice determination? No, Your Honor. We have to make the showing under Martinez that we had ineffective assistance of post-conviction counsel, but that evidence is in the record through multiple affidavits. That's the only new evidence in the record, is the affidavits that support the ineffective assistance of post-conviction counsel claim, or the Martinez procedural defense, because that wasn't there before. But that evidence was presented and it's in the record now. Could we also clarify which claim we're talking about, since I know there's floating characterizations of the claims? The claim that we addressed in the first time that you came to the court of appeals, and we addressed it on alternate grounds from the district court, I believe was a claim that there should have been more investigation that would have been turned over to the expert who then would have given a more robust explanation or analysis of his cognitive situation. So when we're talking now about the claim, is that the claim we're talking about? The underlying claim for the Rule 60B, the Rule 60B itself is based on a lack of integrity in the federal court judgment as a result of the decision in Martinez. But for us to prevail on that, we have to also show you that there's actually some merit to that underlying claim, and the underlying claim is exactly as you have described it. For efficiency purposes, we haven't repeated ineffective assistance of counsel for failure to investigate and present social history to the expert so that he would have come to Dr. Wood's opinion. But that's the one we're talking about. That is the one we're talking about. Thank you. I appreciate the clarification. But so what about just the, in Gonzales v. Crosby, the Supreme Court indicated that a Rule 60B motion that presents a new claim for relief from the state court judgment of conviction is subject to EBPA restriction on successive petitions. I'm wondering why isn't Lopez's Rule 60B, why doesn't it present a new claim for relief and subject to SOS review? Because we are raising a defect in the integrity of the federal court judgment, i.e., that there's a change in the law which establishes that this court's decision is in error on the basis of federal law. We are not, the basis of the Rule 60B is not a ground for habeas relief. In other words, it's not brought pursuant to 2254A or 2254D. It is instead brought to show that the decision of this court on a procedural question is in error. But how does that help you if the underlying claim wasn't raised? I think that's the issue. So if you have, let's say, a new rule about the scope of cross-examination, that's a constitutional rule, but there's never been a claim about that, it doesn't really help you. So I guess if this is not the claim that was originally presented. But it was, Your Honor. I didn't say that it wasn't originally presented. This claim was presented to the district court. It was not presented in state court. That's your finding at page 1206. Right. But it was presented to the district court. We are asking you to reopen the adjudication of that claim that was never adjudicated on the merits by this court or the district court because of an erroneous, now, procedural ruling. And that's exactly what happened in Gonzales. That's exactly what happened in Phelps. It's what happened in Abdurahman. It's what happened in Mitchell. And if instead there had been a merits ruling, then your 60B would be an SOS-type proceeding. But in your view, there was never a merits ruling on your claim in the district court. There was never a merits ruling by this court or the district court. This court said three times in the opinion that it was barred. Barred is a completely separate concept from a decision on the merits of the claim. So the underlying claim is not new. It's not a more broad, he should have also presented all the expert witnesses or all the family declarations independent of how they would have channeled the expert's report. The claim is those declarations, exhibits, social history, evidence, records, should have informed the expert opinion so that the expert would have been able to conclude, as Dr. Woods did, that our client has brain damage, that he has PTSD, that he has dissociative episodes. It would have explained that heinous, atrocious and cruel aggravator in a way that just recently was accepted by the Arizona Supreme Court to overturn a capital conviction for a man who bludgeoned to death three people with a baseball bat over hours. In this case, what was the state court's reason? You said that you've now finished in the state court. Yes, ma'am. This claim. What was their basis for rejecting your claim in this case, even though they accepted it? Another one. It started out as a claim under Maples, and we asked them to hold the case for Martinez. It was decided after Martinez, and the Arizona courts found that Martinez was a federal question and not one that provided an exception to preclusion under state law. So essentially, we followed the path that Martinez followed and got the exact same ruling in state court that Martinez got. So we are on all fours with you. It wasn't on the federal court. Yes, ma'am. It wasn't on the merits. No, ma'am. There was absolutely no decision on the merits by any court, not the superior court, and it was a summary denial in the Arizona Supreme Court. Does it make any difference that in Martinez, I believe, he did raise the ineffectiveness of state post-conviction counsel in his federal habeas proceeding, but Mr. Lopez did not? Yesterday's decision in Sexton shows that it does not, as well as this Court's decision in Neds, the Sixth Circuit's decision in Taft, and the Supreme Court's decision in Panetti. Essentially, the argument is, at this point, because a footnote wasn't dropped that would have been summarily ignored or summarily dealt with, Mr. Lopez should pay for this one. And, okay, it doesn't matter, but there are factual distinctions in your case from Martinez. Do you concede that? There are some factual distinctions between our case and Martinez. Our case, however, is just like Mr. Sexton's case that was decided yesterday. Mr. Sexton did not raise any cause defense in the district court, and that did not give the panel of this Court any pause whatsoever to go directly to the merits of his Martinez claim. On the 60B question, we have now the Fifth Circuit, which is considered 60B and how it interplays with Martinez. If we were to rule otherwise on the 60B question, we'd be creating a circuit split. Why was the – is not the Fifth Circuit a well-reasoned approach to the 60B question? Well, with all due respect to the Fifth Circuit, Your Honor, their decision is wrong. But secondly, if you look at the underlying claim that was brought in the Adams v. Taylor case, you'll see that it wasn't a very strong claim to begin with. It was not very substantial. It was a claim of IAC for failure to object to jury instructions. So how would that figure into our analysis, whether on some sliding scale, how we would view Mr. Lopez's claim? Well, the Supreme Court in Gonzales v. Crosby and this Court in Phelps discussed the fact that in determining an extraordinary circumstance, there is no litmus test. There is no mechanistic approach. Each and every case has to be looked at on a case-by-case basis. Here, the extraordinary circumstance, when you're looking at the denial of a Federal court – of an adjudication anywhere, which is what Martinez was concerned with – of the bedrock claim of ineffective assistance of counsel in sentencing, which goes to the reliability of the death sentence in this case, that's foundational to whether or not there's been a violation of the Constitution here. And we have presented a substantial claim, one that is adequate to go further, which is the language under Miller-El, the language used by the Court in Martinez. That's what we have to establish at this point. All of our affidavits have to be considered true and viewed in the light most favorable to the defendant. And, frankly, if you look at Dr. Woods' affidavit, it is well-collaborated. There are many footnotes in the 83-page affidavit. It is a credible affidavit that establishes ineffective assistance of counsel. I have a question, just so I understand. Do you agree that the six factors set forth in Gonzales only come into play if the Rule 60B motion does not attack the substance of the Federal Court's decision? If I'm understanding your question, Your Honor, yes, we have to answer it this way. Gonzales v. Crosby held that a motion for relief from judgment, which attacks the integrity of the Federal Court's decision and does not present an independent claim for relief under 2254A, is not a second or successive petition, and that's what we have presented here. Now, whether or not the Phelps factors come into play, in Phelps, this Court said that those are not mechanistic rules. It's not a hard and fast test. Those are some factors that can be considered, but they're not the only factors to be considered, and they don't have to be considered in every case or even given great weight in every case. Well, okay, so if we get past that, do you concede that because Martinez changed longstanding law, the first factor in Gonzales, as applied by the Ninth Circuit in Phelps, weighs against granting Lopez relief? No, I don't agree with that at all. Why not? Because the situation here is extraordinary. Yes, in Gonzales, they considered the fact that Gonzales had not appealed to the court and requested cert after the court had accepted cert in a case directly on point, but we have to look at what the settled law in Gonzales was in order to understand that particular case-by-case analysis. In Gonzales, there was a circuit split, and the Supreme Court granted certiorari when Gonzales could have requested certiorari on his own, but he didn't. That's what the court found to be not extraordinary in his case. Here, there wasn't a circuit split. There was 20 years of consistent litigation that NEDS from this circuit says Mr. Lopez was entitled to rely on because to find differently would be to completely undermine the reliability that any litigant can have from the decisions of this court, and essentially what you would then have are, you know, Samuel Lopez's case as being the cautionary tale that every single claim you can possibly think of, no matter how frivolous, that it seems to you at the time, you've got to appeal it. You've got to bring it to the court. You've got to file, you know, 500-page briefs and have the court threaten to sanction you under Rule 11 and for CJA counsel, you know, slash your bills for fear that someday some court is going to change their mind and you're going to be the one who didn't drop the footnote and your client was killed. That can't be the law. That's the kind of troublesome result that Panetti says the law does not tolerate, and it's exactly the kind of result that Article III courts who are invested with the power to do equity under Rule 60v6 must act to prevent such an injustice. This is exactly the situation that Justice Kennedy was talking about in Martinez, a claim that has never been heard on the merits in any court that goes to the question of whether or not Mr. Lopez should live or die. Facts that were not presented to the judge, which, for example, in Porter and Sears, the U.S. Supreme Court talked about the importance of a judge who is sentencing someone to death to understand the individual frailties of that individual in determining whether he deserves death. Here's a man who had no priors for violence, a man who had a torturous upbringing. We're not just talking dysfunctional family. We were not just talking abuse. That belittles what happened in this family. This is a client who witnessed his father traumatizing his family, pouring boiling water over his brother and laughing, bursting through the door like some character out of a Stephen King novel, terrorizing this family, which resulted in our client having dissociative episodes where he would be found crouched in the corner, scared to death, unaware of where he was. If you understand that, then you can understand how it is that he came to be in that crazy place that night, that one horrible night, for which he should be imprisoned. Nobody's talking about no punishment here. We're just talking about is he the worst of the worst, and when you compare him and the cases that were presented to the Supreme Court in Porter, Williams, Wiggins, Ronpillo, if you look at Summerlin, if you look at Joe C. Smith, opinion from this court from 1998, where he was considered a sadistic sexual slayer, and this court found that the evidence in that case that wasn't presented established ineffective assistance of counsel, and he got relief. If you look at Wallace, if you look at Walton, if you look at Dietrich, all of these cases from this court, where the evidence was far more egregious in terms of the crime that was committed, but this court and the U.S. Supreme Court nonetheless found that there was prejudice, that's the claim we have here. We have a man who never had Sixth Amendment counsel, and then he got an even worse post-conviction lawyer who didn't bother to get outside of his office, and then when he was given the evidence from a volunteer who spent three months developing over 1,500 pages of documents, who said, I just need some more time before I get an affidavit, he cut her off and did nothing, and then lied to the court, told the court that the family was unwilling to sign an affidavit, and we know now that's not true. That can't be justice. The Federal courthouse doors can't be closed. What do we do with the fact that it comes to us on abuse of discretion standard under 60B? Under Phelps, Your Honor, this court found that if a lower court heir uses an erroneous view of the law, that is an abuse of discretion. The district court here had an erroneous view of the law because he believed that your ruling under 2254E was somehow divorced from the decision, from a decision about exhaustion. He said, Your finding, that Mr. Lopez failed to develop. That isn't one of the Phelps factors, though. I mean, that's a separate question entirely. The factors that Gonzales, the two or whatever in Gonzales, and the six that we developed in Phelps, the court did go through each of those and correctly identified them. So the fact of another error, assuming there was another error, I don't see what that has to do with our 60B review. That error, Your Honor, infected his entire analysis under Phelps. Well, didn't he have a case that granted relief? He said it goes either way. It's merits or it's not, and I'm going to consider it both ways because I don't know which way, but so he. He used your analysis in two ways, Your Honor. First, he said, I'm not sure whether that's a merits ruling or not. And then he said that even if it's not, 2254E, under the close connection analysis, the 2254E is a separate and independent bar from exhaustion, and that was really the core of his ruling. He was in error there. He was also in error. He also abused his discretion in the weighing of the equities here because the State has no interest in finality or comity in carrying out an execution in a case where the death penalty was achieved in an unconstitutional manner. That's the law of Phelps. That's the law of Gonzalez. That's the law. So the comity factor doesn't weigh for them. Finality doesn't weigh for them. The close connection analysis was wrong. The diligence analysis was wrong. Mr. Lopez has diligently ---- But you'd have to determine on the weighing of the equities that, in fact, it is unconstitutional. I mean, there's sort of a bit of like a Mobius strip here of analysis where if we were to determine that there was a problem with prejudice, then district court's analysis wouldn't necessarily be in error. It would be in error if you were to execute someone who can do so in the face of a constitutional claim or reason that you shouldn't. But you have to sort of win on the merits to make that claim, it seems. So that's why I'm having trouble with trying to figure that, slot that in to the district court, if you understand what my question is, or at least what I'm trying to ponder. Well, I guess what's so extraordinary about this case and why the Court erred on the extraordinary circumstance analysis, which is, again, we said Phelps is not a litmus test. It's not mechanistic, is that here we have a sea change in habeas procedural law. And that sea change shows that this Court's decision to not allow Mr. Lopez to proceed on the merits and get a hearing in federal court was wrong. And because that sea change goes to a fundamental bedrock claim that the Court in Martinez gives you a ticket to make the argument about that fundamental bedrock claim that's never been heard by any court. And the underlying inequity that was at the concern of the Court in Martinez was never being able to have your claim heard by any court.     And that's what happened. And that's what happened. And that's what happened here. Did you want to save your remaining time for rebuttal? I did, but I haven't discussed Pindholster and the Court hasn't decided. So I guess I would just say very quickly, Pindholster doesn't apply because it only applies to cases that were decided on the merits in state court. And I think I'll have a minute and 41 seconds left. Thank you. Thank you. May it please the Court. Counsel, my name is Suzanne Blomaw. I'm with the Arizona Attorney General's Office, and I represent Respondents at Police in this matter. Something that hasn't been discussed that I think is the most important factor here is that there was no procedural default in this case. Martinez is a procedural default case. This Court made its decision based on the merits. But, counsel, it seems to me that Martinez, it's a little murky on this because Martinez sets up a dichotomy between procedural default on the one hand and a decision on the merits on the other hand. And we know that there's some territory in between those two because there are other kinds of procedural bars or defects that are neither procedural default nor a decision on the merits. And what we were talking about in the previous opinion was something in that middle ground. But wouldn't it be fair to understand Martinez to be talking about any procedural mistake of initial post-conviction counsel that prevented a decision on the merits? That case was obviously about procedural default, but why wouldn't it apply to other Several reasons. First, Martinez is a very narrow exception to the Supreme Court's holding in Coleman, and Coleman deals with cause to excuse procedural default. It doesn't deal with some other procedural issue. So Martinez was strictly limited to the issue of cause to excuse procedural default. Martinez did not. But if you had that, if you had Martinez on the books at the time, then the district court wouldn't have been chasing its tail on this multiple procedural default questions, and it would have raised, look, we never got our case heard. Martinez permits us to raise this on the basis of our appellate counsel. So that's all it would do. It would have permitted them to raise it. They just couldn't make that argument back then. Actually, I don't think that's the case, because Martinez would have allowed them, perhaps, if they established the two prongs in Martinez, to raise a claim that hadn't been raised in State court. The problem is, as this Court found, 2254e2 barred them from an evidentiary hearing or expansion of the record. So the Court is still in the position of not being able to consider the evidence that they presented to the district court that had not been presented in State court. Martinez does not discuss 2454 or 2254e2. Martinez ---- Why wouldn't we look at it for the reason that opposing counsel stated? That is, to determine whether in the Martinez world there's a showing of a prejudice or a substantial problem. The prejudice argument that you discussed earlier? Well, no. You're saying that we are not allowed to look at the evidence. That's what you just said. We're not allowed to look at the record that was made. And my question is, why not under the Martinez instruction that in order to determine whether to exercise discretion, which is what the case is about, we have to determine that there's a substantial legal issue. So why wouldn't we look at that record to determine if there's a substantial legal issue presented? Well, again, that's first if Martinez applies to the case. And as maybe I'm not clearly articulating, it doesn't apply to this case because in this case there's no procedural default. The claim, Claim 1C, the portion of the ---- Well, assume for the sake of my question that the logic of Martinez goes to all procedural problems caused by ineffective post-conviction counsel. Could you then answer the question about whether we can look at the record? If we can get past Martinez, I suppose this Court could look at the record. Some things that I think are important to keep in mind in terms of prejudice are not only, as this Court pointed out, the fact that the sentencer found in this case that not only was Lopez one of the worst of the worst, he found that he was the worst he had ever seen in his experience. The other important thing is that there are very fundamental things missing from even the record that exists at this point. One of those things is an affidavit from Dr. Bentheim opining that this social history and family background material would have changed his opinion. Ms. Henry argued that it would have, that if Dr. Bentheim had been provided with this material, he would have arrived at Dr. Wood's opinion. But there's no affidavit from Dr. Pendine indicating that he would have arrived at that opinion. Dr. Bentheim was alive for the first five years of habeas proceedings when they were doing this investigation and obtaining this information. They apparently did not obtain an affidavit from Dr. Bentheim. And the State is now in a position where we can't obtain an affidavit from Dr. Bendham either because he's deceased. The other thing that's missing from the current record is any kind of an affidavit from George Sterling, who was the sentencing counsel, as to what went into his decision to pursue the sentencing proceedings. As this Court found yesterday in Sexton, hearing from the trial counsel why he did what he did is extremely important. This Court in Sexton looked at a ---- Well, what possible reason would there be not to present all the evidence to your own expert if it looked ---- I don't even understand that. I'm not ---- There are plenty of things that counsel could explain. And there are lots of strategic things that happen in trials. But on a failure to investigate claim where the issue is whether everything that could be presented to your expert wasn't developed and it's at least facially helpful, I'm not sure what you would expect counsel to add to that. Well, there's a lot that could be added to that because of the history of this case, and this was briefed in the district court. It was not briefed in this court because it wasn't a certified issue on appeal or even an uncertified issue on appeal. But below, there were two sentencings in this case. The first sentence was reversed because the court had considered an invalid aggravating factor. The Arizona Supreme Court ---- All right. We're aware of that. In the first sentencing proceeding, the sentencing counsel contacted Lopez's family members. He spoke to his mother and he spoke to his brother. And they indicated they would appear at the sentencing proceeding. They failed to show up. There is an exchange on the record where the first sentencing counsel advises the court that Mr. Lopez had expressly prohibited him from subpoenaing his family members into court. And the trial court asked Mr. Lopez, is that true? And he says yes. So that's ---- It still doesn't bear on whether he should have given that information to the expert. They later developed information. Well, and that's what I'm getting to. George Sterling, who was the resentencing counsel, was also the appellate counsel who got him the resentencing hearing to begin with. He was familiar with the record and he knew that history. He then got an investigator and he got with Dr. Bentheim and he provided some new materials to Dr. Bentheim and he deposed him and that evidence was presented. Dr. Bentheim had been retained initially by the first sentencing counsel. He provided a report in which he opined that there were no cognitive problems, that Lopez had no mental history issue or no problems that would have affected his ability to conform his conduct to the requirements of the law. That's probably why the first sentencing counsel didn't call Dr. Bentheim. The second sentencing counsel decides he's going to call Dr. Bentheim for this pathological intoxication defense. He also retains an additional expert, Dr. Bayless. He retains that doctor. He gets the court to order further expenditures so Dr. Bayless can conduct testing. He then chooses not to call Dr. Bayless to testify. We don't know why. I think it's a reasonable inference that can be drawn, is it because Dr. Bayless didn't make any findings that would have been helpful to Lopez. But, of course, we can't get that information from George Sterling now because he died during habeas proceedings. He was alive for the first seven years. They did not get an affidavit from George Sterling and the state can't get one now. The other thing he did is he got an investigator and with the history, rather than going to the family who hadn't shown up to provide any testimony on Lopez's behalf and whom Lopez had said essentially indicated he didn't want them involved in the sentencing proceedings, he got an investigator and he subpoenaed all sorts of social history records, school records, CPS records, DES records. Now, we don't know what he found in those records because he's not here to tell us, but he did do an investigation. There are many defense attorneys who might tell you that with this history of an uncooperative family and an uncooperative defendant, they might find that they're going to get more objective, verifiable social history information from documents, records, CPS records, school records and the like rather than from the family. He's also on a resentencing and is on a pretty short time frame. They've argued that, I mean, this took them years to get these affidavits from the family members. The first ones are in, the earliest ones I believe are in 1999. This is years after the sentencing. And they argue that, well, sometimes with family members you have to kind of hold their hand and take them through it and, you know, work them through all their resistance. When did you first learn that Lopez or, I mean, Ezepelli, that Lopez was alleging his sentencing counsel was ineffective because he did not present Lopez's background to the court as mitigating evidence? Well, I think that's important. You're saying to the court as mitigating evidence. They said in their briefs that that's not the claim that they're presenting here today, yet Ms. Henry stood up and she seems to be continuing to expand the claim as she stands here today. Well, no, the claim, I think, well, the claim, as I understand it, is failure to investigate and present social history to Dr. Bentheim, that that was ineffective. The original claim was that failure to properly prepare Dr. Bentheim for the sentencing proceeding. And there were two specific people whose names I forget at the moment. Additional witnesses and information. And we dealt with that claim. Yes. The documents. The documents. We've dealt with that claim already on the merits. And this is what I'm talking about, though, when we discuss 24E2 and its relevance to this case. A portion of the claim was supported with evidence in State court. The portion of the claim dealing with this social history information was not supported with evidence in State court. So this Court made a merits determination on Claim 1C, which was the claim, ineffective assistance of counsel for failing to adequately prepare Dr. Bentheim. So that merits determination. But that takes us back to, without elaborating, what is the answer to Judge Callahan's question as to when it became clear that the absence of this social history information was the key problem that was being advanced? In terms of it being presented to the sentencer, that's never been clear. In terms of it being presented to Dr. Bentheim, that was asserted in habeas proceedings. Well, I guess what I heard that came to court was in Federal, I believe that's what counsel said, actually, is that it was in Federal habeas proceedings. No. Not to the court, not to the sentencer, only to Dr. Bentheim. The Federal court. I'm sorry. It was Federal habeas proceedings were the first time that this claim came to the Federal court. Correct? I'm not sure I'm understanding, but. I think part of the problem is that she made it very clear what claim it is they're pursuing as part of the ineffective appellate counsel. In our earlier opinion, 1C actually encompassed something broader than failure to prepare Dr. Bentheim and give him testimony from a couple additional witnesses. That was one part of it. But the second part of that claim, which they claimed was really one and the same, but which we disagreed with, the second part of that claim is precisely what they're investigation and then that given to Dr. Bentheim. Correct. They presented that claim in Federal district court, correct? They did. They did. So that's the first court that heard that claim. The Federal district court. Yes. Yes. But I guess I'm seeing a different – I'm struggling with it, and I asked counsel for Mr. Lopez that isn't it a different claim about social history as it applies of a factor of mitigation as opposed to investigation turned over to Dr. Bentheim? And so I'm still struggling with the second and successive habeas question. It is a different claim. And if what they are presenting now is failure to provide that material to the sentencer, that is definitely a second and successive petition. And if that is the claim, if it's second and successive, then that's the end of the inquiry, correct? Yes. But is it – what's your position? Well, that's the problem. I'm hearing two different things from Lopez's camp. I mean, first there's – Well, based on the briefs, what was your position when you got up to argue? What was – were you saying that it was second and successive and that's the end of the inquiry? If it's to present it to the sentencer, it's second and successive, but it's also our position that if it fails to present it to Dr. Bentheim, it is also second and successive. And if I have a moment to describe the claims, there was one claim here, Claim 1C. As Your Honor pointed out, a portion of that claim was supported with evidence in state court. That was the additional witnesses, the testimony and the pretrial statements of Rodriguez and Savory. There was another portion of that claim that was not supported with evidence in state court. That was the family history, social background mitigation. But it's one claim, failure to provide the correct materials to Dr. Bentheim. This Court made a merits determination on Claim 1C. In doing so, when it began – Let me just stop you right there. That's not true. I think the problem is one of nomenclature here, okay? So it's called 1C, but didn't we in fact say, look, you may call it 1C, but it's not really one claim. There's part of it that you exhausted in state court, and we're going to hear that, and here's the answer. But there's part of it that wasn't, or at least there's this procedural default argument, and we're going to take that part of it, which is also part of 1C, but it's really a different and separate claim. And we dealt with it on alternative grounds. When I then asked Ms. Henry, what is your claim today, she was quite clear that it is what I'll call the second half of 1C, having to do with information to the doctor. There may be an additional claim, which is what you're now referring to, which is information to the sentencing judge. Directly to the sentencing judge. And we'll ask her about that, because I understand from reading her brief, I understand where you could divine that, and I don't know if that's also here. But those are two separate claims that you need to deal with. And so I think the one we're trying to focus on is the one that she laid out in pretty long words to try to be precise, and I don't want to repeat all those again. But I'll just call that the information to the doctor claim. So that's the one I think we're dealing with. Right. And our position is, and I'll move on, but our position is even dealing with that claim to the doctor, and obviously, Your Honors are in a better position to interpret your own opinion than I am. I'm just going off of what my understanding of your opinion is, and if I'm misunderstanding, you'll let me know I'm misunderstanding. But after determining that you would not reach the question of procedural default, and after determining that you could decide it instead on 2254E2, you went on to determine the merits of the claim that had been supported with evidence in state court regarding the two witnesses. And you said, because Lopez cannot rely on evidence that he failed to present in state court, we will only determine whether Lopez established his original ineffective assistance claim, namely his claim that counsel performed efficiently and prejudicially by failing to furnish Dr. Bentheim with the statements and testimony of Rodriguez and Cipori. To me, that sounds like you're deciding this claim based on the evidence you could consider, and you weren't going to decide it based on evidence you couldn't consider. Correct. But that's also, you know, in a way we were foreshadowing pinholster. Yes. And it's – there has been some changes now because they've, of course, gone back to the state court and they did, as I recall it, in the district court, and what I've – the record I've looked at is they did support this other claim, not before the state court, but in the federal district court. There's – that's where you get the evidence of what they would have given to the doctor and their view, of course, is that it would have changed his view, but you started your argument with saying he doesn't ever say that. No, he's never even been asked that, and, of course, he can't be asked that now because he's deceased. But I think the problem here for them is that pinholster is controlling on this case rather than Martinez. In pinholster, the court said, at a minimum, therefore, 2254E2 still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court. So 2252 still restricts the evidence. That hasn't been overturned. That wasn't addressed in Martinez, and one would imagine with Martinez being decided within the same year, if Martinez – There's a tension there, potentially, isn't there, because the whole premise of Martinez is that the first-level post-conviction counsel in the state court was ineffective, well, maybe constitutionally ineffective or maybe just bad, because Martinez is not a constitutional case. But if that's true and now there's an opportunity to open that up, it seems to be in some tension with pinholster, which says, well, you can't introduce evidence now. I suppose there are some cases in which it's obvious from the original record that the PCR counsel was terrible, like not raising inadmissible evidence that was allowed in without objection or something. But the question is, well, wouldn't you, under pinholster, if you had the cause – if you could excuse procedural default, one of the options under pinholster is, well, we can't look at stuff the state court didn't look at. You send it back to the state court. They say, yes or no, I'm going to look at it. If they say I'm not going to look at it, it's back to the Federal court. And if they say they are, well, then they do, and then it still comes back to us. So I don't know that pinholster – I mean, there is some tension. I agree with Judge Graber, but it doesn't really implicate Mr. Lopez, as I see it, in this posture. I mean, we're here on a 60B motion, so that's the primary thing we're trying to look at, and also whether, you know, how Martinez might apply to Mr. Lopez. So I'd appreciate, you know, one of the things that counsel argued is that the Fifth Circuit was just wrong in saying that the new law, you know, is not an appropriate factor to excuse the 60B. So I'd appreciate your comments on that as well. I think that the Adams v. Thaler opinion is a well-reasoned opinion. It addresses the two Gonzales prongs very clearly, that the first prong does not weigh in Lopez's favor. It weighs against him. The second prong, diligence, also does not weigh in Lopez's favor. It weighs against him. It weighs against him even more in this case because I believe in the Adams case, Adams did raise ineffective assistance of PCR counsel as cause to overcome procedural default in the Federal habeas district court proceedings. In this case, Mr. Lopez never did. Could I ask you about that? To me, that's a very appealing and logical argument. But then when you stop and think about it, if it was an argument that was foreclosed, why should he have raised it? I mean, because under the law, he really wasn't permitted to have any relief under that under Coleman and in all of our cases. So how does that cut on that factor? Well, first off, in Gonzales, it was also a situation where you could argue Gonzales couldn't have raised it, or actually, it's more the argument, was he aware he could raise it or could he have raised it? He always can raise it. Was he aware he could raise it? Here, clearly, they were aware he could raise it. They chose not to raise it. So I think that's important in distinction, and Gonzales addresses that. I think the other thing that is important is that this has been raised. But I think they're pulling out, like, why should we bother the court with things that are not going to succeed? Well, I understand that. We're just doing what we're supposed to be doing and not bringing up frivolous things. Martinez raised it. Adams raised it. Other Petitioners who have been represented by the Federal Public Defender's Office have raised it. And that's what I'm trying to struggle with, because, sure, they could raise it, but then, you know, we would say this argument is foreclosed by, and then we would have a whole slew of cases. Are they supposed to raise, continue to raise all of these prophylactically? I mean, that's just one of many things that you can't raise right now in Federal court, so. Well, and, again, it's not that they can't raise it. And I think, you know, looking at Bonin v. Calderon, which is what the district court relied on for essentially its dicta, that even if you did raise this, I couldn't consider ineffective assistance of PCR counsel as cause, the Martinez opinion indicates that Coleman was not that clear. Well, let me ask you this. Is that where the two of you really just depart, starting with Martinez and Coleman, at a fundamental level, that you're saying Martinez, it just makes, it's a very narrow exception, and that it doesn't overrule Coleman? And is she saying that it essentially does? I don't want to characterize her comments, but she's saying it overrules settled precedent. So is that basically where you first depart? Probably. I mean, I think that Martinez makes it clear that it is a very narrow exception. But it's new. They also make it clear that it's quite new. Well, yes, and the law in Gonzalez was new as well. And Gonzalez wasn't, that wasn't determined to be extraordinary circumstances under Rule 60B. The law was new in Adams v. Thaler, but that's not extraordinary circumstances. So, I mean, it's something that this Court does have to look at in terms of, and also I guess if it was a constitutional newness, then you have the possibility of a second successive application, but you don't have that here because it's not a constitutional ruling, right? I don't know that whether it's a constitutional ruling affects whether it's a second and successive. Sure it does. Under the statute. Under the statute, that's what we look at. That's one of the things we look at. Well, I mean, in terms of whether they're raising a claim that was previously raised, that was previously presented to the district court. They are asking the district court to review a claim. But statutorily it matters. If there's a new rule of constitutional law that's made retroactive, that's the standard for permission. I believe that's 2244B2, and here we would be dealing with 2244B1. And under B1, it is a second and successive petition if they are presenting a claim that was previously presented to the court. Under B2, it's if they're presenting a new claim. New claim. So this claim regarding providing the material to Dr. Bentheim was presented before. They're asking the court to look at it again, essentially with the evidence they couldn't get in under 2254E2 before. That's essentially what they're asking the court to do. That does not implicate, in our view, Martinez. And, again, Adams v. Thaler arose out of procedural default. It did not arise out of a barring of evidence under 2254E2. So I think that Adams v. Thaler's analysis is important here, but it doesn't even go as far as this Court could go in Lopez based on the difference in the facts. The other thing that's important to consider, the Ninth Circuit has applied and the Ritter Court, I think it's the Fifth Circuit, I'm not sure, have applied four additional factors. The Supreme Court has only applied the two in Gonzales, and neither of them weigh in their favor here. But even if this Court is to consider the four additional factors that this circuit has considered under Phelps, probably the most important factor to consider is the close connection. Is there a close connection between Martinez and Lopez? Now, I can see where there would be a closer connection between Adams and Lopez because that was a procedural default case. But ---- You mean Adams and Martinez. I'm sorry. Adams and Martinez, yes. But it's hard to see how there's such a close connection between Martinez and Lopez when Lopez did not arise at a procedural default. You don't think we need to get to the analysis of abuse of discretion, but if we get there, why didn't, you know, from your perspective, why did the district court do it right? The district court did not abuse its discretion because it properly applied the factors under Gonzales and determined that they do not weigh in favor of determining that there are extraordinary circumstances to reopen habeas proceedings. And the court also correctly applied the four additional factors that are set forth in Phelps and in Ritter. They were not diligent in pursuing review. There is no close connection. The State does have an interest in finality. I understand the Gonzales Court doesn't weigh that very heavily, but it's still something that this Court should consider under Phelps. The State does have an interest in comedy. The only factor that the court, district court, weighed either neutrally or in their favor was the delay. The district court said that they did not delay between when Martinez was decided and when they filed the Rule 60b motion. If we somehow got through the, your first argument and determined that we ought to look to see whether Martinez would permit the raising of this claim, do you agree with counsel that we could make this prejudice determination, including some of the things you just laid out earlier as to whether the claim is framed as a substantial claim? You know, yes. I mean, but, of course, my argument is that there's not enough there. If the court's concerned that there's a question, then obviously, you know, we would want the opportunity, and I would hope this court perhaps could look at the district court pleadings where we did brief that issue to look at our arguments made there and the evidence in support of it. But our position is you can get to it. Do you want more time? No. Okay. I just want to make sure. I thought I may have misheard you. No. We don't want more time. We don't think it's necessary for the court to get to prejudice. But, you know, I think it's important. Sexton got to prejudice yesterday. Yes. But the circumstances there are different because that was a procedural default case, and that's not and it's not a Rule 60B motion. It was a motion for partial remand, which is a different standard. So assuming this Court can get past whether it's a successive petition and get past Rule 60B and gets all the way to prejudice, because they don't have an affidavit from Dr. Bentheim, because they don't have an affidavit from George Sterling, and because we know what the trial court thought, the sentence or thought about this case, there is no prejudice. Thank you. Thank you. If I could very quickly get to the Bentheim argument that was raised for the first time in oral argument here this morning, I'll inform the Court that Dr. Bentheim in 1999 had dementia. His secretary had to lock him in the office from the outside when I went to interview him. That's why we don't have an affidavit from Dr. Bentheim. That's why we have the affidavit from Dr. Woods. That wasn't our fault. That was post-conviction counsel's fault. There is an affidavit from Joel Brown. There's an affidavit from Robert Doyle, post-conviction counsel, who say that my client was cooperative, who also say they never tried to talk to the family. So any idea that this family was uncooperative comes from ignorance on the part of those lawyers. Counsel, I'm going to go back to the nature of the claim. I understood from your opening argument that your claim was failure to give social history information to Dr. Bentheim for him to reach a certain opinion. Is your claim also or instead that the information should have been given directly to the sentencer by some other source than Dr. Bentheim, or is this all the Dr. Bentheim? This is all Dr. Bentheim. Okay. So it's all somewhere within what was called 1C in the district court. Yes. The claim that this court determined to be a completely new claim never presented to the state court that page 1401 of Penholster says would be something separate and apart from the Penholster language because it was, in fact, a brand-new claim. And was the other part that we ruled on on the merits in the district court having to do with the documents that were given or the other two witnesses, was that also part of the 1C? And everything was under the umbrella of 1C? Everything was under the umbrella of 1C, and then this court split it. Okay. Just like the court in Sexton. There's no claim that there was failure to investigate information that should have been presented to the sentencing judge. That's not a claim that we're looking at. We are sticking with the claim that you all have separated. And, again, I apologize for the loose language, but saying that over and over and over again. No, no. That's what we appreciated. I think we understood what you were saying. With respect to the idea that 2254E is separate from exhaustion, I would urge the Court to take a look at Keeney v. Tamayo-Reyes, where in Keeney, cited in Williams, which was also echoed in Justice Alito's opinion in Osborne, the Court said that it would be illogical to separate claim exhaustion from fact exhaustion. In Williams, the Court said that 2254E was the codification of Keeney. These two concepts are fraternal twins. There is a close connection. That's how the district court abused its discretion. This Court's decision is now erroneous under Martinez. And, therefore, we need to reopen under 60B so that we can get to the claim that was originally presented. And I would direct the Court to page 4 of my reply brief with respect to the arguments regarding other cases where the Supreme Court found prejudice being, in cases much worse than Mr. Lopez's case and where the mitigation was exactly the same or the expert opinion, the cognitive impairment, which is sort of a super mitigator for the Supreme Court, which is present here as well. For all those reasons, Your Honor, we would request, one, in light of everything that we've discussed here today, a state execution is in order, in order for this Court to be able to look at all these issues carefully and closely, after which we urge the Court to remand to the district court with instructions to reopen the habeas proceedings. Thank you. Thank you, counsel. I really appreciate the hard work of both of you. These were extremely helpful arguments. And we will stand adjourned. �
judges: Graber, McKeown, Callahan